THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CHRISTOPHER CRUZ RODRIGUEZ**,ET AL.<br><br>    Plaintiffs,<br><br>       v.<br><br>**CARLOS MOLINA RODRIGUEZ,** ET AL**.**<br><br>    Defendants. | Civil Case. NO. 12-1189(PG) |

**OPINION AND ORDER**

    This is an action brought by Christopher Cruz Rodriguez (hereinafter the "plaintiff" or "Cruz Rodriguez"), an inmate under the custody of the Puerto Rico Department of Corrections, alleging, *inter alia*, that he was brutally beaten by a correctional officer and denied adequate medical care to recover from his injuries. He brings this suit pursuant to 42 U.S.C. §1983; the First, Fourth, Sixth, Eight and Fourteenth Amendments to the Constitution of the United States, under the Constitution of the Commonwealth of Puerto Rico and under several state law provisions.

    On March 19, 2013 defendants filed a motion to dismiss (Docket No. 23) pleading that this Court should dismiss the complaint with prejudice because plaintiffs:(1) failed to exhaust administrative remedies prior to filing suit; (2) failed to plead a cause of action as to the claims predicated on the Fourth, Sixth, Eight and Fourteenth Amendments and (3) because several defendants were protected by the qualified immunity defense. Id

    For the reasons discussed below, we **GRANT** in part and **DENY** in part the Motion to Dismiss.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiffs filed the instant action on March 16, 2012. See Docket No. 1. Following some predicaments with the issuance and service of summons, the defendants finally made their initial appearance on February 15, 2013. See Docket No. 21.

On March 19, 2013 defendants filed the Motion to Dismiss in lieu of their answer to the complaint. See Docket No. 23. On May 16, 2013 defendants filed a motion to deem as unopposed the motion to dismiss on account of plaintiffs' lack of opposition to the motion. See Docket No. 24. Scarcely a month after, plaintiffs finally filed their belated response, which was ultimately stricken from the record. See Dockets No. 26, 28 and 29. Pursuant to the court's Order of January 14, 2014 (Docket No. 29), the motion to dismiss stands unopposed.

## II.  STANDARD OF REVIEW

When reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must keep in mind that "[t]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief… this short and plain statement need only give the defendant fair notice of what the… claim is and the grounds upon which it rests." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted). Nevertheless, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has… held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

In order to assess the sufficiency of a complaint's factual allegations, the court engages in a two-step inquiry. Manning v. Boston Medical Center Corp., 725 F.3d 34, 43 (1st Cir. 2013) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citation omitted)). "First, conclusory allegations that merely parrot the relevant legal standard are disregarded, as they are not entitled to the presumption of truth." Id. "Second, we accept the remaining factual allegations as true and decide if, drawing all reasonable inferences in plaintiffs' favor, they are sufficient to show an entitlement to relief." Id.

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663

(2009) (citing Twombly, 550 U.S. at 556).

### III. APPLICABLE LAW AND ANALYSIS

#### A. Dismissal of claims against Carlos Molina and Jesús González

Defendants move to dismiss the claims against co-defendants Carlos Molina ("Molina") and Jesús González ("González") because the facts alleged were insufficient to state a plausible claim for relief. In analyzing whether plaintiffs passed the 12(b)(6) hurdle, the Court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff [ ]." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

We read plaintiffs' complaint to assert a claim of supervisory liability under Section 1983 against Molina, who was Secretary of Corrections at the time that the events related in the complaint took place and González, who was Secretary of Corrections when the Complaint was filed. Section 1983 claims require three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action. Sánchez v. Pereira-Castillo, 590 F.3d 31 (1st Cir. 2009); see also 42 U.S.C. §1983.

Plaintiffs sued Molina in his personal capacity and González in his official capacity. See Docket No. 1. The inclusion of these defendants seems to be premised on the theory that those defendants failed to adequately supervise the correctional officers implicated in the incident where Cruz Rodríguez was supposedly beaten. Although "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior," Iqbal, 129 S.Ct. at 1948, supervisory officials may be liable on the basis of their own acts or omissions. Aponte Matos v. Toledo Dávila, 135 F.3d 182, 192 (1st Cir. 1998).

In the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may

contribute to a civil rights deprivation." Camilo–Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). In either scenario, the plaintiff in a Section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Sánchez, 590 F.3d at 48 (internal citations omitted).

To be liable, then, Molina and González must have personally participated in the violation of the prisoner's rights or directed others to commit the violation or at the very least, have knowledge and acquiesced to their subordinates' violations.

Neither is alleged here. Turning to the complaint, we find that it does little more than make reference to the defendants' identities and does not include even a conclusory allegation as to their role or involvement in the action. The complaint is simply silent as to co-defendants Molina and González' involvement in the underlying constitutional violation and therefore, the claims against those defendants are DISMISSED WITHOUT PREJUDICE.

**B.   Plaintiffs failed to state a Fourth Amendment claim**

Next, defendants aver that plaintiffs did not put forth allegations to state a plausible claim for relief under the Fourth Amendment to the United States Constitution.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The exigencies of the Fourth Amendment apply to unreasonable searches and seizures. "The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." Florida v. Jardines, 133 S.Ct. 1409, 1414 (2013)(citing United States v. Jones, 132 S.Ct. 945, 950-951 (2012)(internal citations omitted)).

We need not parrot the standard for pleadings under Fed. R. Civ. P.

12(b)(6). Even in the most generous reading of the complaint, the Court fails to identify any allegation that conforms to a Fourth Amendment violation. In fact, it is unclear whether the Fourth Amendment extends to pretrial detainees, like Cruz Rodriguez, at all. Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989).

Thus, plaintiffs' Fourth Amendment claims are DISMISSED WITHOUT PREJUDICE.

### C. Plaintiffs failed to state a Sixth Amendment Claim

Defendants proffer that plaintiffs' Sixth Amendment claims are equally unavailing. See Docket No. 23 at page 15. "The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." Iowa v. Tovar, 541 U.S. 77, 80-81 (2004). The Sixth Amendment also encompasses the right to a speedy trial. Klopfer v. State of N.C., 386 U.S. 213, 223 (1967).

The complaint states that while Cruz Rodriguez was in prison awaiting trial for criminal charges, he "was not given adequate medical attention for his psychiatric illness" which delayed his trial because he was not given the medication he needed to "fully function." See Docket No. 1, ¶¶ 22-24.

In that sense, we read plaintiffs' averments as stating a claim for the right to enjoy a speedy trial in criminal prosecutions. See Docket No. 1 at ¶¶ 24 and 57. Whether there has been a violation of a defendant's right to a speedy trial turns on a balancing test that "compels courts to approach speedy trial cases on an ad hoc basis." Baker v. Wingo, 407 U.S. 514, 530. In Baker, the Supreme Court identified four factors that courts should consider as part of that inquiry. These include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.

Cruz Rodriguez has failed to plead sufficient facts to support his speedy trial claim under the Sixth Amendment. At no point did he specify how his trial was delayed and for how long. There are also no allegations concerning the prejudice that he suffered as a result of the alleged delay. A passing reference to a delay in the criminal proceedings against him is simply not enough. Plaintiffs' Sixth Amendment claims are thus DISMISSED WITHOUT PREJUDICE.

### D. Plaintiffs failed to establish a claim of cruel and unusual

**punishment under the Eight Amendment**

According to Cruz Rodriguez, defendants violated his Eight Amendment rights by: (1) using excessive force against him; (2) denying him access to the courts of the Commonwealth of Puerto Rico; (3) being deliberately indifferent to his medical needs and (4) subjecting him to unconstitutional conditions of confinement.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Fourteenth Amendment applies those restrictions imposed by the Eight Amendment to the States. Hall v. Florida, 134 S.Ct. 1986, 1992 (2014)(citing Roper v. Simmons, 543 U.S. 551, 560 (2005); Furman v. Georgia, 408 U.S. 238, 239-240(1972) (*per curiam*)).

In order for the protections of the Eight Amendment to kick in, the State must have complied with the constitutional guarantees traditionally associated with criminal prosecutions. Whitley v. Albers, 475 U.S. 312, 318, (1986). In other words, the Eighth Amendment does not apply until "after sentence and conviction." Hubbard v. Taylor, 399 F.3d 150, 166 (3rd Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989)).

Pretrial detainees, however, are not devoid of protection. The Fourteenth Amendment gives state pretrial detainees rights which are at "least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). In fact, "[t]he Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that '[d]ue process requires that a pretrial detainee not be punished.'" Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014) (citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979)).

After reviewing the complaint, the Court finds that the only claims that would be subject to Eight Amendment scrutiny are those concerning actions or omissions that took place after Cruz Rodriguez was sentenced and transferred to the Correctional Complex in Bayamon. See Docket No. 1, ¶ 55. The claims that arise out of events that took place prior to his conviction are governed by the Fourteenth Amendment.

In that particular, Cruz Rodriguez avers that "he has been placed in a cell with no medical attention for his psychiatric condition, he has

yet to be interviewed by a social worker, and has not been given the necessary basic needs like soap and access to laundry." Id. at ¶ 56.

Defendants aver that plaintiffs: (1) failed to exhaust administrative remedies as to the living conditions claims before bringing the present action and (2) failed to properly plead their assertions under the Eight Amendment. The Court will address each separately.

**1. Failure to exhaust**

The Prison Reform Litigation Act of 1995 (hereinafter the "PRLA"), 110 Stat. 1321-73, as amended, 42 USC §1997e(a), states, in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner[1] confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). In that sense, the PRLA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances, or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The applicable administrative remedies are defined not by the PLRA, but by the prison grievance process itself. Tomassini v. Correctional Health Services Corp., No. 09-2059, 2012 WL 1601528, at *1 (D.P.R., May 07, 2012) (citing Jones v. Bock, 549 U.S. 199, 218 (2007)). The Puerto Rico Department of Corrections (PRDOC) has promulgated the Regulation to Address the Applications for Administrative Remedies Filed by Members of the Correctional Population, setting forth the grievance procedures for inmates under their custody. See Regulation No. 8145 of January 19, 2012; see also Cruz-Berrios v. Oliver-Baez, 792 F.Supp.2d 224, 228-229 (D.P.R. 2011) for a detailed description of the proceeding set forth in Regulation No. 8145.

The prisoner must exhaust administrative remedies even if the administrative procedures "would appear to be futile at providing the kind of remedy sought." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). In fact, even if the plaintiff seeks monetary relief which

---

[1] Prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversion program." 42 U.S.C. §1997e(h).

the prison administrative process does not encompass, the inmate is still not excused from completing the prison administrative process. <u>Lopez-Vigo v. Puerto Rico</u>, No. 13-1071, 2014 WL 495721, at *3 (D.P.R. February 06, 2014) (<u>citing</u> <u>Booth v. Churner</u>, 532 U.S. 731 (2001)). Although not jurisdictional, the exhaustion requirement is nonetheless mandatory. <u>Casanova v. Dubois</u>, 289 F.3d 142, 147 (1st Cir. 2002)(<u>citing</u> <u>Curry v. Scott</u>, 249 F.3d 493, 501 n. 2 (6th Cir. 2001)).

In the case at hand, it is undisputed that Cruz Rodriguez's 1983 claim is an action "with respect to prison conditions" under § 1997e(a). Moreover, as an inmate within the meaning of the statute, plaintiff Cruz Rodriguez was bound to follow the exhaustion of remedies procedures set forth in the PRLA before filing the complaint.

Cruz Rodriguez makes several claims regarding lack of adequate medical treatment. <u>See</u> Docket No. 1, ¶ 56. In particular, he avers that he has not been interviewed by a social worker, "has not been given necessary basic needs like soap and access to laundry," and that he has been "forced to wash his clothes in the toilet with hand soap." <u>Id</u>.

However, we find no allegation indicating that plaintiffs requested an administrative investigation pertaining to those living conditions claims. The First Circuit has held that dismissal is the appropriate remedy when administrative remedies have not been exhausted. <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31,  36 (1st Cir. 2002). As such, plaintiffs may not proceed with the aforementioned claims until such time as they exhaust administrative remedies.[2] For that reason, the Eight Amendment claims for unconstitutional conditions of confinement are DISMISSED WITHOUT PREJUDICE.

**2. Failure to plead**

The Court need not address whether plaintiffs met the pleading standard since the claims are dismissed without prejudice until plaintiffs exhaust administrative remedies as required by the PLRA.

**E. Plaintiffs failed to state a claim under the Fourteenth Amendment**

Pursuant to defendants' motion to dismiss, plaintiffs also failed to state a claim under the Fourteenth Amendment. In that sense, defendants state that "plaintiff failed to establish which process was

---

[2] We decline defendants' invitation to dismiss the claims with prejudice.

due and in what way did the government failed to comply [sic] it. More importantly, plaintiff failed to allege in what way co-defendants affected said due process." See Docket No. 23 at page 12.

Defendants' limited view of the Fourteenth Amendment only contemplates claims for procedural due process and obviates the entire spectrum of substantive due process claims that are available for inmates. Preiser v. Rodriguez, 411 U.S. 475, 492 (1973) ["The relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen. For state prisoners, eating, sleeping, dressing, washing, working, and playing are all done under the watchful eye of the State, and so the possibilities for litigation under the Fourteenth Amendment are boundless."]

In reading the Complaint under the microscope of Fed.R.Civ.P. 12(b)(6), the Court can identify several instances in which plaintiffs raise claims that could be construed under the Fourteenth Amendment.

**1. Deliberate Indifference to serious medical needs**

When correctional officers are said to be deliberately indifferent to the serious medical needs of an inmate, their actions constitute a violation of the Eight Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 103 (1976). "Developed in the Eighth Amendment context and used there to address prisoner claims of inadequate medical care… Estelle bears its uses in the Fourteenth Amendment context—because, again, detention center officials surely owe pretrial detainees…at least the same standard of care prison officials owe convicted inmates." Blackmon v. Sutton, 734 F.3d 1237, 1244 (10th Cir. 2013). Deliberate indifference might manifest by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Moore v. Ozmint, No. 10–3041, 2012 WL 762460, at *8 (D.S.C. 2012).

Here, Cruz Rodriguez alleges that the defendants acted with deliberate indifference to his health by "placing him in a cell with no medical attention for his psychiatric condition." See Docket No. 1, ¶ 55. The plaintiff also states that he "was not given adequate medical attention for his psychiatric illness, and was not facilitated the

psychotropic medications needed in order to fully function." See Docket No. 1, ¶¶ 22-23. After the incident where Cruz Rodriguez was allegedly beaten, he avers that he asked for and was denied medical attention. See Docket No. 1, ¶ 44. Finally, he states that after he was convicted and transferred to another facility, he has continued to suffer the lack of medical attention. Id. at ¶ 56.

Cruz Rodriguez only mentions that he exhausted administrative remedies as to the lack of medical care that he received after the alleged beating. See Docket No. 1, ¶ 48. As to those circumstances, the complaint states that Cruz Rodriguez's mother, plaintiff María de Lourdes Rodriguez Ruiz, filed a criminal complaint at the Ponce Police Headquarters. See Docket No. 1, ¶ 37. Furthermore, "Cruz Rodriguez was eventually taken to the correctional hospital, after his mother, Rodriguez Ruiz, complained at the Central Level of the Administration of Correctional Facilities of the Commonwealth of Puerto Rico…regarding the lack of medical care given to her son." Id. at ¶ 48. Thereafter, Rodriguez Ruiz allegedly went to the Special Investigations Bureau of the Department of Justice (NIE) (Id. at ¶50) and followed through on her complaint at the Administration of Correction Facilities. Id. at ¶51.

We thus find that plaintiffs have satisfied their burden of pleading exhaustion of administrative remedies prior to filing suit. The analysis then turns on whether they satisfied the pleading standard as to deliberate indifference to plaintiff Cruz Rodriguez's medical needs.

To establish deliberate indifference in the context of Eight Amendment protection, a prison official must both know of and disregard an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted). In order to recover, a plaintiff alleging a violation of this obligation must show: 1) that the deprivation alleged was "sufficiently serious," such that it "result[ed] in the denial of the minimal civilized measure of life's necessities" and 2) that prison officials "[knew] of and

disregard[ed] an excessive risk to inmate health and safety." See Farmer, 511 U.S. at 834, 837 (internal quotations omitted).

Analyzing the facts of the case against this legal backdrop, we find that Cruz Rodriguez has satisfied the burden. The deprivation that plaintiffs allege, namely, that Cruz Rodriguez was not provided with medical care after the alleged beating is "sufficiently serious." Moreover, the Court cannot see how the co-defendants who were officials at the correctional facility were not aware of the alleged beating. The fact that plaintiff Rodriguez Ruiz made a formal complaint also meditates against a determination of lack of knowledge. Finally, taking as true plaintiffs' allegations, if defendants did not provide medical attention to Cruz Rodriguez after the alleged assault, their actions would constitute an excessive risk to the inmate's health and safety. Having alleged all the necessary factors required to establishing a cause of action for deliberate indifference to medical needs, it is evident that plaintiffs' claims should not be dismissed.

   **2. Excessive Use of Force**

The use of unnecessary or gratuitous force against a prisoner is cognizable in a prisoner civil rights suit for damages. Bruce v. Wade, 537 F.2d 850, 853 (5th Cir. 1976) (a violation of § 1983 is clearly stated by the unjustified beating of an inmate at the hands of prison officials).

A prisoner alleging excessive force must objectively show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). The subjective component encompasses "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Whitley, 475 U.S. at 321 (internal citations omitted). The objective element generally requires more than a de minimis use of force. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). "A claim of excessive force under the Fourteenth Amendment is analyzed as if it were an excessive-force claim under the Eighth Amendment." Fennell v. Gilstrap, 559 F.3d 1212, 1216

(11th Cir. 2009)(citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)).

In this case, viewing the evidence in the light most favorable to plaintiffs, we find that they satisfied the pleading standard as to the claims of excessive use of force. According to plaintiffs, co-defendant Acosta Zambrana "hit the plaintiff with his fists in the face and broke plaintiff's nose." Docket No. 1, ¶ 30. The complaint further states that Cruz Rodriguez "picked up his hands in order to cover his face and the co-defendant then banged the plaintiff against an adjacent locker area and threw several punches at the plaintiff's ribs and chest areas." Id. The plaintiffs thus averred that Cruz Rodriguez suffered a physical injury and in fact describe the physical force used against him.

In addition, by plaintiffs' averments, Rodriguez Ruiz ("Rodriguez Ruiz"), mother of Cruz Rodriguez, filed a criminal complaint at the Ponce Police Headquarters detailing the incident where her son was arguably assaulted at the hands of a corrections officer. See Docket No. 1 at ¶37. Afterwards, "she went to Las Cucharas Correctional Complex and met [sic] and officer there who was assigned to investigate all incidents that occurred [at the complex]." Id. at ¶38. Then, the police officer interviewed Cruz Rodriguez. Id. at ¶41. Eventually, Ms. Rodriguez Ruiz "followed through on her complaint at the Administration of Correctional Facilities, and found out that the incident had been labeled as an accident." Id. at ¶48.

Hence, the plaintiffs have sufficiently pled that they exhausted administrative remedies as to the incident pertaining to the alleged assault. Furthermore, defendants' request to dismiss with prejudice the excessive use of force claims is DENIED.

**F. Qualified Immunity**

Defendants likewise move to dismiss plaintiffs' claims against co-defendants Carlos Molina, David Aguila and Maria Lugardo because they were entitled to qualified immunity on all claims.

The Court has already ruled that plaintiffs did not plead sufficient facts to state a cause of action against Carlos Molina. Thus, the Court will only discuss the qualified immunity doctrine as to co-defendants Aguila and Lugardo.

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability from paying an award of damages to a plaintiff for on-the-job conduct, so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The qualified immunity inquiry is "a pure question of law." Elder v. Holloway, 510 U.S. 510, 514 (1994).

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [defendants'] conduct violated a constitutional right." Saucier, 533 U.S. at 201. As to the second prong, whether the law was clearly established, such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. If the public official can demonstrate he did not know, nor should he have known the relevant legal standard, then qualified immunity applies. Harlow, 457 U.S. at 819.

In determining whether allegations state a plausible claim for relief, the Supreme Court has suggested that we "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950. The complaint alleges that Lugardo was the Superintendent of Section 676 of Las Cucharas Prison on the date of the beating and thereafter. Aguila was the second in command at Section 676 at the time that the alleged beating took place.

Plaintiffs sue defendants Lugardo and Aguila on theories of unconstitutional conditions of confinement and excessive use of force. As to the unconstitutional conditions of confinement claims, the Court has already established that they must be subject to prior administrative review. Hence, the Court will not dwell on the merits of the qualified immunity assertions at this point until such remedies have been exhausted.

As to the claims for excessive use of force, the complaint only signals Acosta as the perpetrator. The allegations against Lugardo and Aguila would thus be limited to a claim of supervisory liability under Section 1983 and a claim under the Fourteenth Amendment for deliberate indifference to Cruz Rodriguez's health and safety.

According to the complaint, co-defendants Lugardo and Aguila were allegedly "aware of the situation and beating." See Docket No. 1 at ¶39. It is further detailed that, in the process of inquiring about her son's injuries, plaintiff Rodriguez Ruiz spoke to Aguila, who indicated that Acosta "had been going through a rough time" and Cruz Rodriguez "just rubbed him the wrong way." See Docket No. 1, ¶¶ 45-46.

Similarly, Lugardo "refused to handle the situation and shrugged plaintiff Rodriguez Ruiz' demands and inquiries and assigned the matter to codefendant Aguila." Id. at ¶47.

By those averments, we find that plaintiffs have sufficiently plead that Lugardo and Aguila's conduct amounts to condonation or tacit authorization, as is required to establish a claim of supervisory liability under section 1983. Thus, the first prong of the qualified immunity inquiry test has been met.

As to the second prong, we conclude that plaintiff Cruz Rodriguez' right to be free from excessive use of force at the hands of a prison official is clearly protected by the Fourteenth Amendment. No reasonable officer could have thought that it was permissible to use the amount of force that Acosta allegedly used on Cruz Rodriguez. It follows, then, that no reasonable official carrying out supervision duties could claim to be unaware that such conduct is proscribed by the constitution. It is well settled that a "deliberately indifferent police supervisor may be held liable for the constitutional violations of his subordinates." Camilo-Robles, 175 F.3d at 7 (citing Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997)). Based on the above determinations, it is clear that plaintiffs have put forth sufficient facts to overcome the qualified immunity defense.

The analysis now turns to whether co-defendants are entitled to qualified immunity as to the deliberate indifference to medical needs claims. Plaintiffs aver that co-defendants "took about an hour to deliver the inmate-plaintiff to the Institution's medical facility. However, he

was not given any medical care, or medicines, but rather was told to clean himself up." See Docket No. 1, ¶ 32. Cruz Rodriguez also says that he was not seen by any doctor at the 676 section's medical facilities. Id.

If, as the complaint states, Cruz Rodriguez suffered a broken nose and received punches in the face, ribs and chest, (Id. at ¶ 30), it must have been obvious that he had to receive medical attention. If co-defendants failed to do so, it would amount to a violation of his constitutional right to be free from cruel and unusual punishment. We find that co-defendants Aguila and Lugardo cannot make the case for qualified immunity because Cruz Rodriguez's right was clearly established at the time of the alleged misconduct.

Therefore, defendants' request for dismissal of the claims against Lugardo and Aguila on account of qualified immunity is DENIED.

### G. Plaintiffs' claims under Article 1802 of the Civil Code should be dismissed

Finally, defendants claim that since no federal claims withstand 12(b)(6) scrutiny, the court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims. However, since this Court did not dismiss all the claims, there is a basis for federal and thus supplemental jurisdiction. Thus, defendants' position regarding dismissal of plaintiffs' 1802 claims is inapposite.

### IV. CONCLUSION

In light of aforementioned, this Court hereby **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss (Docket No. 23).

**SO ORDERED.**

In San Juan, Puerto Rico, this 8th of September, 2014.

S/ **JUAN M. PÉREZ-GIMÉNEZ**
**JUAN M. PÉREZ-GIMÉNEZ**
**UNITED STATES DISTRICT JUDGE**